UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 10-205

ROBERT CHARLES HART, III                    SECTION N


<u>ORDER AND REASONS</u>

This matter is before the Court on Movant, Robert Charles Hart, III's Motion to Vacate, Set
Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (Rec. Doc. 109). The government opposes.
(Rec. Doc. 115). Movant has also filed "Traverse to Response" to the government's opposition. (Rec.
Doc. 118). Having considered the record, the law, and the submissions by both parties, the Court
hereby DISMISSES Movant's motion WITH PREJUDICE.

**I. Factual Background and Procedural History**

On July 14, 2010, a Bill of Information was filed against Movant, Robert Charles Hart, III
charging him with accessory after the fact to a car-jacking that resulted in the death of two victims,
in violation of Title 18 U.S.C. § 3, and distribution of a quantity of marijuana in violation of Title
21 U.S.C. § 841(a)(1) and 841(b)(1)(D).  (Rec. Doc. 24).  Hart executed a waiver of indictment on
August 13, 2010. (Rec. Doc. 36). On September 1, 2010, Hart entered a guilty plea to both counts
of the Bill of Information. (Rec. Doc. 39). Sentencing was held on May 2, 2013 and Movant was
sentenced to 180 months imprisonment as to Count 1 and 24 months as to Count 2, to be served
consecutively, for a total of 204 months, and three years of supervised release as to each of Counts
1 and 2, to be served concurrently. (Rec. Doc. 97).

1

Hart filed an appeal on May 15, 2013 arguing that this Court misinterpreted and misapplied the Sentencing Guidelines and imposed an unreasonable sentence. (Rec. Docs. 98 and 107 at 3). His appeal was dismissed by the United States Court of Appeals for the Fifth Circuit on June 26, 2014. (Rec. Doc. 107). The Fifth Circuit held that Movant had validly waived his right to directly appeal his conviction and sentence on any ground except a sentence in excess of the statutory maximum. (Rec. Doc. 107 at 2).

Hart filed this instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on February 20, 2015. (Rec. Doc. 109). The government concedes that this petition was timely filed. (Rec. Doc. 115 at 2). Hart raises six issues, specifically:

(1) Whether counsel was ineffective for allegedly failing to notify Movant that his appeal was dismissed;

(2) Whether counsel was ineffective for not challenging his plea agreement's appellate waiver on appeal;

(3) Whether counsel was ineffective for not objecting to this Court's upward departure sentence and not raising a "duress" defense;

(4) Whether counsel was ineffective for allegedly not advising Movant of the plea agreement's appellate waiver;

(5) Whether Movant's plea was knowing and voluntary; and

(6) Whether the government breached the plea agreement.

(Rec. Doc. 109). The government filed a response May 22, 2015 opposing Petitioner's motion. (Rec. Doc. 115). Hart filed a response to the opposition on July 8, 2015.[1] (Rec. Doc. 118).

---

[1] Although the reply was entered into the record on July 14, 2015, Hart's filing was signed as having been mailed on July 8, 2015. By order of this Court, he was granted leave to reply to the opposition, with an extension of the filing deadline to July 10, 2015. (Rec. Doc. 117). Given that the filing is by a prisoner, the date of filing is deemed to be the date the document is placed in the prison mail. *Houston v. Lack*, 487 U.S. 266, 101 L. Ed. 2d 245 (1988). Thus, this document is deemed to have been timely filed.

## II. Analysis

When a defendant files a motion under § 2255, the court must make a prompt determination of the issues raised therein, adhering to the procedures set forth in 28 U.S.C. § 2255 and the Rules Governing § 2255 Proceedings in the District Courts. When a motion is filed, the Court must conduct an initial review to determine whether the motion and the record conclusively show that the prisoner is entitled to no relief.  28 U.S.C. § 2255(b); Rules Governing Section 2255 Proceedings, Rule 4(b). If the answer to this question is no, the Court must provide notice to the U.S. Attorney and order him to file an answer. *Id*. After the answer is filed, the Court must review it, along with the remainder of the record to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). An evidentiary hearing must be granted where there are contested issues of fact material to the disposition of the motion. See *Freidman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979).

### A. Ineffective Assistance of Counsel

Four of Hart's six claims involve a claim of ineffective assistance of counsel. The Sixth Amendment entitles the Movant to the effective assistance of counsel at all critical stages of the criminal process. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. __, __, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012). To sustain a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984). A court may consider the twin requirements of deficient performance and prejudice in either order; failure on one prong obviates the need to analyze the other. *Id.* at 697, 104 S. Ct. at 2069.

Deficient performance requires a showing "that counsel made errors so serious that counsel

3

was not functioning as counsel guaranteed" by the Sixth Amendment and that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688, 104 S. Ct. at 2064. Generally, to make such a showing, a defendant must "identify the acts or omissions alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S. Ct. at 2066. Counsel's strategic or tactical trial decisions are not per se unreasonable just because another attorney, with the benefit of hindsight, would have made a different choice. *Buckley v. Collins*, 904 F.2d 263, 265 (5th Cir. 1990). A reviewing court must determine whether the identified acts or omissions fell outside "the wide range of professionally competent assistance," while indulging "a strong presumption that counsel's conduct falls within" that range. *Id.* at 689, 104 S. Ct. at 2065. A defendant must overcome "a strong presumption" that counsel's conduct "might be considered sound trial strategy." *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)).

The *Strickland* standard also applies to ineffective assistance of appellate counsel claims. *Duhmel v. Collins*. 955 F.2d 962, 967 (5th Cir. 1992) *citing Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhmel*, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient. *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) *citing Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989). Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Id.* at 1037.

Once there has been a showing of deficient performance, the *Strickland* test also requires a showing of prejudice. Prejudice requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* However, "conclusory assertions of prejudice are insufficient to satisfy the second prong of *Strickland.*" *Green v. Johnson*, 160 F.3d 1029, 1041 (5th Cir. 1998) (citing *Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994)).

Specifically, Hart alleges (1) his attorney's failure to notify him of the denial of his appeal; (2) his attorney's failure on appeal to address the appeal waiver; (3) his attorney's failure to object to the upward departure in his sentence and not raising a duress defense; and (4) his attorney's failure to inform him of the appeal waiver in the plea agreement, all constitute ineffective assistance of counsel. (Rec. Doc. 109 at 13-20).

### (1) Failure to Notify

As for the first allegation, Hart alleges that he received ineffective assistance of counsel when his attorney, Kerry Cuccia, failed to notify him directly that his direct appeal had been denied. (Rec. Doc. 109 at 13.) However, Mr. Cuccia did notify Hart's family regarding the dismissal of the appeal "with the explicit understanding that they would notify Mr. Hart." (Affidavit of Kerry P. Cuccia, Rec. Doc. 115-1). Further, Hart's family remained in contact with Mr. Cuccia's office for several months and collected a copy of the Court's decision on August 11, 2014. *Id.* Mr. Cuccia maintains that at no point was he asked to take any further action on Hart's behalf. *Id.*

Although it is unsettling that Mr. Cuccia was not in direct contact with his client regarding the status of the appeal, in this Circuit, an attorney's failure to timely notify a criminal defendant of the final disposition of the direct appeal does not implicate a federal constitutional right. *See Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2003) (holding the constitutional right to counsel terminates once the appellate court issues its opinion and, therefore, appellate counsel's failure to notify the

defendant of the outcome of the appeal cannot furnish a basis for a claim of ineffective assistance on appeal). Hart's claim of ineffective assistance of counsel for failure to notify him regarding the dismissal of his appeal fails to raise a cognizable claim.

### (2) Failure to Address Appeal Waiver

Hart alleges he received ineffective assistance of counsel due to his attorney's failure to address the waiver of appellate rights contained in his plea agreement on direct appeal. Hart's plea agreement with the government states (in bold and italics in the original document):

> Except as otherwise provided in this paragraph, the defendant hereby expressly waives the right to appeal his conviction and/or sentence on any ground, including, but not limited to any appeal right conferred by Title 28, United States Code, Sections 1291, and by title 18, United States Code, Section 3742. The defendant further waives his right to contest his conviction and/or sentence in an collateral proceeding, including proceedings brought under Title 28, United States Code, Section 2241 and Title 28, United States Code, Section, [sic] on any ground, except that the defendant may bring a post conviction claim if the defendant establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself. Subject to the foregoing, the defendant reserves the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum.

(Rec. Doc. 41 at 2). Hart claims his attorney's failure to challenge the validity of the waiver, or even address the waiver after the government raised the issue, is tantamount to ineffective assistance of counsel. The government argues that "counsel acted reasonably when he decided to not attack the appellate waiver on appeal." (Rec. Doc. 115 at 9). Further, on direct appeal of his conviction, the Fifth Circuit held that Hart "knowingly and voluntarily waived his right to appeal his sentence except in limited circumstances not present in the instant appeal." *United States v. Hart*, 570 F. App'x 392, 393 (5th Cir. June 4, 2014).

As stated earlier, counsel's failure to raise every meritorious claim on appeal does not make

his performance deficient, just as failing to raise a frivolous claim also does not make his performance deficient. *Green v Johnson*, 116 F.3d at 1125-26, 1037 *citing Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989).  To succeed on a claim of ineffective assistance of appellate counsel for failure to raise a specific issue, the defendant must show that the Court would have granted relief on appeal. *Id.* Thus, for Hart to succeed on this claim, he would need to show that his appellate waiver was not knowing and voluntary and his appellate counsel was therefore deficient for not raising the argument on appeal.

Hart has failed to allege any facts to counter the record that his waiver was knowing and voluntary. First, the transcript from Hart's re-arraignment confirms that the Court conferred with Hart regarding his understanding of the plea agreement letter and he answered in the affirmative that he understood the letter's contents. (Rec. Doc. 101 at 9). Further, the Court informed Hart that the plea agreement letter contained certain waivers pertaining to appellate rights, and as such it was the Court's practice to only conditionally accept his plea of guilty until he had a chance to review the pre-sentence report. *Id.* at 10. At his sentencing, the Court confirmed that Hart did not have any objections to the pre-sentence report and re-iterated that his plea had only been conditionally accepted at the re-arraignment due to the appellate waivers. (Rec. Doc. 99 at 3). Hart then confirmed that he wished to proceed with his guilty plea. *Id.*

Hart's appellate attorney was aware of the record and Hart's knowing and voluntary waiver of his appellate rights. It is not deficient performance to avoid making a frivolous argument. Thus, Hart's second claim of ineffective assistance of counsel is also without merit.

### (3) Failure to Object to Upward Departure and Not Raising Duress Defense

7

Hart's third claim of ineffective assistance of counsel alleges his attorney failed to object to the Pre-sentence Investigation Report ("PSR") which included two bases for a sentence upwardly departing from the sentencing guidelines and another base for an upward variance. (Rec. Doc. 109 at 15). In addition, Hart alleges his attorney's failure to explain his duress defense and cooperation with the government led to him being sentenced to 204 months imprisonment instead of the agreed upon 132 months. *Id.* at 17. The government contends that Hart also declined to object to the PSR and raise the duress defense when he was given a chance to speak at sentencing. (Rec Doc. 115 at 10). The government argues that Hart's role in the offense was much greater "than his bargained-for accessory plea." *Id.* at 11. When evaluating an ineffective assistance of counsel claim in regards to sentencing issues, prejudice is established when a defendant can show with reasonable probability that but for his attorney's errors regarding sentencing matters, he would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438-439 (5th Cir. 2004).

Under United States Sentencing Guideline § 5K2.12, a defendant is eligible for a downward departure if the commission of the offense was due to:

> [S]erious coercion, blackmail or duress, under circumstances not amounting to a complete defense. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involved a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

U.S. Sentencing Guidelines Manual § 5K2.12 (2013).

The facts from the Factual Basis, which Hart stipulated were true and accurate as to his

8

involvement, show that Hart was responsible for initiating the chain of events that lead to the death of three individuals by approaching one of the victims in order to set up a drug transaction. (Rec. Doc. 42 at 1-2). Hart voluntarily rode along with the shooter Stephen Hardrick and a second acquaintance, and remained as Hardrick picked up a third acquaintance. *Id.* at 2. Hart informed the others regarding the pending drug deal and coordinated with one of the victims to complete the deal. *Id.* at 3. It was Hart who approached the victims in order to inspect and retrieve the drugs. *Id.* Hart was the one who, after inspecting the drugs, reported to Hardrick that the asking price of $900 was too high. *Id.* Hart stood by as Hardrick robbed the two victims at gunpoint of their wallets, jewelry and firearm. *Id.* at 3-4. Hart continued to go along with Hardrick's directives to ride in the victims' vehicle along with one of the victims and one of the acquaintances while Hardrick drove his vehicle with the other acquaintance and victim as passengers. *Id.* During the drive from the Lakeview neighborhood in New Orleans to New Orleans East, Hart coordinated with Hardrick to stop at an apparently random stretch of road in New Orleans East. *Id.* at 4. Again, Hart continued to fully participate in the events as Hardrick ordered the victims out of the vehicles and ordered them to lay face down on the ground and proceeded to shoot them multiple times. *Id.* Hart wiped the stolen vehicle to eliminate any fingerprints. *Id.* Hart also sat by as Hardrick declared he was going to shoot a third victim who happened to have driven past on his way home because Hardrick "was not taking any chances," and Hart sat by as Hardrick completed this purpose. *Id.* After watching Hardrick shoot three people, Hart proceeded to remain in the company of Hardrick and smoked a marijuana blunt with him and the other two acquaintances. *Id.* at 4-5. Finally, Hart received the victim's stolen firearm from Hardrick and proceeded to hide the firearm outside of a FEMA trailer. *Id.* at 5.

   None of the facts to which Hart stipulated indicates that he was acting under a serious threat

to his physical safety. Further, when given the chance to object to the PSR's upward departures and variances and raise the duress argument, Hart and his attorney failed to do so. At sentencing, the Court directly asked Hart if he had received and read the PSR and whether he objected to anything in it. (Rec. Doc. 99 at 2). Hart responded that he had read the PSR and had no objections. *Id.* Later during the proceeding, the Court asked Hart if he had anything he wished to say prior to imposition of a sentence. *Id.* at 13. Hart apologized to the victims' families, his family and the Court and asked for forgiveness and leniency in his sentence. *Id.* Hart did not raise the issue of duress when given the chance nor did he object to the PSR's findings.

However, contrary to Hart's allegations, his attorney did raise the issue of his client's cooperation with the federal government's investigation, prosecution and eventual plea agreement of Hardrick. (Rec. Doc. 99 at 14). During the sentencing proceeding, following Hart's statements, his attorney spoke to the Court regarding his client's co-operation and assistance in bringing Hardrick to justice and asked the Court to impose the government's recommended sentence of 132 months. *Id.*

During Hart's re-arraignment hearing, the Court confirmed that Hart understood the maximum possible sentence he faced for Count One (accessory after the fact of a car-jacking resulting in murders) was fifteen years imprisonment and for Count Two (distribution of marijuana) was five years imprisonment. (Rec Doc. 101 at 5). Further, the Court confirmed that Hart understood that these were only guidelines, and the Court, nonetheless, had discretion to sentence him as the Court saw fit. *Id.* at 6. The Court also confirmed with Hart's attorney that no representations had been made to Hart as to what sentence the Court would impose. *Id.* at 11.

At Hart's sentencing proceeding, the Court found that the recommended sentence of 132

months was inadequate and sentenced him to 204 months imprisonment. (Rec. Doc. 99 at 14-15). This sentence, while an upward departure under U.S.S.G. § 5K2.1 and § 5K2.0, was still below the combined statutory maximum possible for Counts One and Two. Hart has failed to show his attorney's performance was deficient and that he suffered any prejudice due to that performance.

### (4) Failure to Inform of Appeal Waiver

Hart's fourth claim of ineffective assistance of counsel alleges that his counsel failed to inform Hart of the appeal waiver language in the plea agreement. (Rec. Doc. 109 at 6). However, this claim is refuted by Hart's own words at his re-arraignment. As stated herein, the Court conferred with Hart regarding his understanding of the plea agreement letter, and he answered in the affirmative that he understood the letter's contents and signed it. (Rec. Doc. 101 at 9). Further, the Court informed Hart that the plea agreement letter contained certain waivers pertaining to appellate rights and as such it was the Court's practice to only conditionally accept his plea of guilty until he had a chance to review the pre-sentence report. *Id.* at 10. At his sentencing, the Court confirmed that Hart did not have any objections to the pre-sentence report and re-iterated that his plea had only been conditionally accepted at the re-arraignment due to the appellate waivers. (Rec. Doc. 99 at 3). Hart then confirmed that he wished to proceed with  his guilty plea. *Id.* Further, Hart confirmed to the Court that he understood his attorney's statements that he had explained the charges to his client and that his client was knowingly and voluntarily pleading guilty "with full knowledge of the consequences of his plea." (Rec. Doc. 101 at 11).

Hart's own petition contradicts his claim that he received a copy of the plea agreement sans appellate waiver. (Rec. Doc. 109 at 6). Included with his petition is a copy of the plea agreement Hart signed and entered in to the record which contains the appellate waiver at issue. (Rec. Doc. 109

at 32). (Plea Agreement is Rec. Doc. 41). This was not an 11(c)(1)(C) plea agreement which stipulated a specific sentence. Hart seems to be confusing a subsequent letter from the government to the Court regarding additional facts that needed to be conveyed to the Court prior to sentencing and a "'post-plea' sentencing agreement" which was recommending a sentence of 132 months. (Rec. Doc. 109 at 36-7). This was not the plea agreement, nor was this letter binding on the Court.

Hart's claim that his attorney was ineffective for failing to inform him of the appellate waiver in the plea agreement is without merit.

### B. Knowing and Voluntary Plea

As stated above, Hart has failed to provide the Court with any facts to rebut the record's evidence and the Fifth Circuit's ruling that his guilty plea was knowing and voluntary. The transcripts from both his re-arraignment and his sentencing indicate that he was aware of and understood the consequences of pleading guilty. He also indicated he was pleading guilty on his own volition, without threats, coercion or promises from anyone. This claim is without merit.

### C. Violation of Plea Agreement

Hart's final claim in his § 2255 petition is that the government violated the terms of the plea agreement. (Rec. Doc. 109 at 12). The government "must strictly adhere to the terms and conditions of its promises in [a plea] agreement" when a defendant pleads guilty pursuant to that agreement. *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005)(*citing United States v. Valencia*, 985 F.2d 758, 760 (5th Cir. 1993)).  The test to determine if a breach of the agreement exists involves "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Purser*, 747 F.3d 284, 290 (5th Cir. 2014) (*citing United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005)). Since the government is the drafter of the agreement,

the agreement is construed strictly against the government. *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). The burden is on the defendant to demonstrate the underlying facts that establish the breach by a preponderance of the evidence. *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010) (*citing United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996)).

Specifically, Hart alleges that he was given two different plea agreements, one with the appellate waiver and one without, with one outlining the post-plea agreement for a sentence of 132 months.[2] (Rec. Doc. 109 at 32 and 36-7). Hart claims the agreement regarding the sentence "reasonably induced him to plead guilty." (Rec. Doc. at 24). However, that letter was not Hart's plea agreement and came months after he had already plead guilty in court. Hart accuses the government of seeking the enhanced sentence he received, thereby "breach[ing] the plea agreement." *Id.* The actual plea agreement states that in exchange for the guilty plea, the government would not seek the death penalty against Hart. (Rec. Doc. 41 at 1). The ultimate sentence, as discussed above, was the Court's decision based on the facts and circumstances of the offense and the defendant. The government, contrary to Hart's allegations, did not seek the enhanced sentence, but rather, actually recommended the 132 months sentence to the court and did not seek the death penalty, as promised.

Hart has failed to show by a preponderance of the evidence any facts that indicate the government breached their agreement with him. This claim is also without merit.

### D. Movant's Entitlement to Evidentiary Hearing

Section 2255(b) requires the Court to "grant a prompt hearing" on any motion filed under

---

[2]The first of the two letters was the plea agreement between Mr. Hart and the government. The second letter included with his petition is actually a "post-plea" sentencing agreement to notify the Court that the government was recommending a sentence of 132 months.

its auspices, "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief." The Fifth Circuit has repeatedly held that "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981) (citing *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977)).

Hart has failed to establish his ineffective assistance of counsel claim under *Strickland*. Under these circumstances, an evidentiary hearing is not required. *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992); *citing United States v. Auten*, 632 F.2d 478 (5th Cir. 1980) ("A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files and records of the case conclusively show that the prisoner is entitled to no relief.").

In light of the forgoing, an evidentiary hearing is not required to resolve movant's claim of ineffective assistance of counsel, involuntary and unknowing plea and alleged government violation of the plea agreement.

Accordingly,

14

IT IS ORDERED that the Motion to Vacate, Set Aside or Correct Sentence is DENIED WITH

PREJUDICE.

New Orleans, Louisiana, this 13th day of January, 2016.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE